IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
WESTERN DIVISION

| | |
|---|---|
| THE CONSTRUCTION INDUSTRY RETIREMENT FUND OF ROCKFORD, ILLINOIS and THE CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS,<br><br>    Plaintiffs,<br><br>vs.<br><br>NEAL MASONRY, INC., an Illinois corporation<br><br>    Defendant. | District Judge:<br><br>Magistrate Judge:<br><br>Case No: |

## COMPLAINT

Plaintiffs, The Construction Industry Retirement Fund of Rockford, Illinois, and The Construction Industry Welfare Fund of Rockford, Illinois, by their attorneys, WilliamsMcCarthyLLP, bring this Complaint against Defendant, Neal Masonry, Inc.

### COUNT I
### (Failure to Pay Contributions to the Funds)

1. Jurisdiction in this cause is based upon §301 of the Labor-Management Relations Act ("LMRA"), as amended. 29 U.S.C. § 185(a).

2. Jurisdiction in this cause is also based upon §502 of the Employee Retirement Income Security Act of 1974 ("ERISA"), as amended. 29 U.S.C. § 1132.

3. Venue is proper pursuant to 29 U.S.C. § 1132(e)(2) in this District because The Construction Industry Retirement Fund of Rockford, Illinois and The Construction Industry

Welfare Fund of Rockford, Illinois are administered in Rockford, Illinois (collectively referred to as the "Funds").

4. The Funds are multi-employer benefits plans withing the meaning of ERISA. They are established and maintained pursuant to their respective Agreements and Declarations of Trust in accordance with § 302(c)(5) of the LMRA. 29 U.S.C. § 186(c)(5). The Funds have standing to sue pursuant to 29 U.S.C. § 1132(d)(1) and 29 U.S.C. § 185(a).

5. Neal Masonry, Inc. is engaged in the construction industry and doing business within this geographic area, is an industry affecting interstate commerce, and is an employer within the meaning of § 3(5) of ERISA and § 301(a) of the LMRA.

6. Kankakee Bricklayers and Allied Craftsmen Union Local 37 is a labor union which represents its members in negotiations and dealing with employers with respect to rates of pay, hours of work, and other conditions of employment.

7. On or about May 25, 1993, Kankakee Bricklayers and Allied Craftsmen Union Local 37 and Neal Masonry, Inc. entered into a Collective Bargaining Agreement, attached hereto as Exhibit A.

8. On or about April 1, 2005, Neal Masonry, Inc. and the Construction Industry Welfare Fund of Rockford, Illinois (the "Welfare Fund") entered into a Participation Agreement, attached hereto as Exhibit B.

9. On or about April 1, 2005, Michael F. Neal, as owner/operator of Neal Masonry, Inc. and the Welfare Fund entered into a Participation Agreement, attached hereto as Exhibit C.

10. Under the terms of the Collective Bargaining Agreement, the Participation Agreements, and subsequent Trust Agreements to which Neal Masonry, Inc. is bound, Neal Masonry, Inc. is required to make contributions on behalf of its employees covered by the Agreements for pension benefits, health and welfare benefits, apprentice, working dues and to submit monthly remittance reports in which Neal Masonry, Inc. identifies the employees covered under the Agreements and the amount of contributions to be remitted to the Funds on behalf of each covered employee.

11. Under the terms of the Agreements, contributions to the Funds are due on the 15th day of the month following the month hours are worked and are considered delinquent after the 25th day of the month.

12. Under the terms of the Agreements, any employer who fails to make the contributions by the 25th day of the month after the work was performed is required to pay an additional amount of ten percent (10%) in liquidated damages, along with all legal fees and costs expended to collect the unpaid contributions.

13. An employer who fails to pay contributions to the Funds sixty (60) days following the due date are considered delinquent and is required to pay interest at fifteen percent (15%) per annum (retroactive to the due date) and twenty percent (20%) in liquidated damages along with all legal fees and costs expended to collect this money.

14. Under the terms of the Agreements to which Neal Masonry, Inc. is bound, Neal Masonry, Inc. is required to submit its books and records to the Funds on demand for an audit to determine benefit contribution compliance.

15. Beginning in August 2010, and intermittently thereafter, Neal Masonry, Inc. has failed to report and/or pay contributions owed to the Funds, all in violation of Neal Masonry, Inc.'s contractual obligations and the obligations under State and Federal law.

16. More specifically, Neal Masonry, Inc. underpaid contributions for August 31, 2010 through the present. As a direct and proximate result of Neal Masonry, Inc.'s failure to pay contributions, employees of Neal Masonry, Inc. are in jeopardy of losing their health and welfare eligibility and benefits.

17. Neal Masonry, Inc.'s actions in failing to make timely reports and contributions violate § 515 of ERISA, 29 U.S.C. § 1145, and §301 of the LMRA. 29 U.S.C. § 185.

18. Pursuant to § 502(g)(2) of ERISA, 29 U.S.C. § 1132(g)(2), §301 of the LMRA, 29 U.S.C. § 185, and the terms of the Agreements, Neal Masonry, Inc. is liable to the Funds for unpaid contributions, as well as interest and liquidated damages on the unpaid and late contributions, reasonable attorney's fees and costs, and such other legal and equitable relief as the Court deems appropriate.

WHEREFORE, Plaintiffs respectfully request that this Court enter a Judgment against Defendant, Neal Masonry, Inc. as follows:

(a) Directing Neal Masonry, Inc. to submit its books and records to an audit on demand by Plaintiffs;

(b) Entering judgment in a sum certain against Neal Masonry, Inc. on any amount shown due and owing pursuant to the audit, including unpaid contributions, liquidated damages, interest, audit costs and attorney's fees and costs;

(c) Enjoining Neal Masonry, Inc. from violating the terms of the Agreements;

    (d)  To award Plaintiffs any further legal and equitable relief as the Court deems appropriate; and

    (e)  Ordering Neal Masonry, Inc. to remain current in payment of all contributions to the Funds.

             THE CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS and THE CONSTRUCTION INDUSTRY RETIREMENT FUND OF ROCKFORD, ILLINOIS, Plaintiffs,
             By:  WILLIAMSMCCARTHYLLP


             By:  /s/Troy E. Haggestad


Troy E. Haggestad (#06229384)
WILLIAMSMcCARTHYLLP
120 West State Street, Suite 400
P.O. Box 219
Rockford, IL 61105-0219
815/987-8900
thaggestad@wilmac.com

Case: 3:18-cv-50179 Document #: 1 Filed: 05/31/18 Page 6 of 12 PageID #:6
Case: 1:10-cv-08___3 Document #: 1-1 Filed: 12/28/10 Page 1 of 1 PageID #:8
10/26/2010 10:42 8159635352 BAC LOCAL 6 IL PAGE 01

# MEMORANDUM OF AGREEMENT

THIS AGREEMENT, made and entered into in Kankakee, Illinois, by and between the Neal Masonry, Inc. hereinafter referred to as (EMPLOYER), and the KANKAKEE BRICKLAYERS AND ALLIED CRAFTSMEN UNION LOCAL 37, hereinafter referred to as the (UNION).

In consideration of the mutual promises of each other, the parties hereby AGREE as follows:

1. The EMPLOYER recognizes the UNION as the sole and exclusive collective bargaining representative for and on behalf of the employees of the EMPLOYER, now or hereafter employed within the territorial and occupational jurisdiction of the UNION.

2. The parties do hereby adopt the latest Agreement, and all approved amendments thereto, between the UNION and the KANKAKEE AREA CONTRACTORS ASSOCIATION, INC. and agree to be bound by all of the terms and conditions thereof for the duration of such Agreement and for the period of any subsequent extensions including any amendments which may be subsequently made, unless either party serves written notice upon the other at least sixty (60) days prior to the stated expiration date in the Agreement or to any subsequent expiration date of a desire to terminate this Memorandum of Agreement.

3. This Agreement shall become effective upon the date of execution.

IN WITNESS WHEREOF, the parties have executed this Memorandum of Agreement the day of 25th May, 1993.

Employer: Neal Masonry, Inc.
Address: 330 Fox Maciel
City and State: Braidwood, IL
Telephone: 932-4996

By: Kim Neal

Per Business Manager Local 37
William Neal

**EXHIBIT A**

01/12/2006 11:53 FAX 815 397 4982    CONST. IND. FUNDS    ☒001

Case: 1:10-cv-08.. #:Document #: 1-2 Filed: 12/28/10 Page 1 of 3 PageID #:9

# PARTICIPATION AGREEMENT
## CONSTRUCTION INDUSTRY FUND of ROCKFORD, ILLINOIS

This Participation Agreement ("Agreement") is dated for reference purposes 4-1-05 and is executed by and between Neal Masonry, Inc. ("Employer") and the CONSTRUCTION INDUSTRY WELFARE FUND of ROCKFORD, ILLINOIS ("Welfare Fund").

The CONSTRUCTION INDUSTRY WELFARE FUND of ROCKFORD, ILLINOIS ("Welfare Fund") has been established by an Agreement and Declaration of Trust effective April 20, 1954, as amended from time to time ("Trust Agreement"), for the purpose of providing welfare benefits for employees represented through collective bargaining by the unions and for certain other nonbargaining unit employees.

The Employer desires to enable those of its employees who qualify as "Participants" to participate in the Welfare Funds, in accordance with terms and conditions set forth in the Trust Agreement and this Participation Agreement.

In consideration of the mutual covenants and undertakings set forth in this Agreement and other good and valuable consideration, the sufficiency and receipt of which is acknowledged, the Employer and the Welfare Fund agree that the recitals set forth above are a part of this Agreement and further agree as follows:

1. Representations of Employer.

    (a) The Employer is doing business in the State of Illinois as a corporation, partnership or sole proprietor.

    (b) The Employer is signatory to an agreement with at least one of the unions that participate in the CONSTRUCTION INDUSTRY WELFARE FUND of ROCKFORD, ILLINOIS.

2. Eligibility and Participation. For purposes of this Agreement, a "Participant" shall be defined to include all nonbargaining unit employees of the Employer; provided, however, that the Employer may exclude any classes of employees permitted under the provisions of the Internal Revenue Code and any rules and regulations promulgated under the Code.

3. Employer Contributions.

    (a) Employer shall make contributions to the Fund for 173 hours per month per nonbargaining unit Participant at the contribution rates as determined from time to time by the Trustees of the Fund. Nothing in this Agreement shall require the Employer to make contributions to any fund other than the Welfare Fund for non-bargaining employees.

    (b) Monthly contributions must be mailed to the Trust office no later than the 15th day of the month following the month for which the payment is due. Payments received after the 25th of the month due are considered delinquent (see #6)

Page 1 of 3

EXHIBIT B

SEP 1 2 2005

M.J.L. copy ?

Case: 1:10-cv-08... Document #: 1-2 Filed: 12/28/10 Page 2 of 3 PageID #:10
07/12/2005 11:59 FAX 815 397 4363    CONST. IND. FUNDS    @002

## PARTICIPATION AGREEMENT
### CONSTRUCTION INDUSTRY WELFARE FUND of ROCKFORD, ILLINOIS

4. **Adoption of Trust Agreement.** Employer adopts and agrees to be bound by the Trust Agreement of the Welfare Fund, as amended from time to time, including but not limited to the Fund's right to conduct audits, as well as any rules and regulations promulgated by the Welfare Fund's Board of Trustees.

5. **Term and Termination**

   (a) This Agreement and the adoption of the Trust Agreement referred to in paragraph 4 above shall become effective on __9-1-05__, 49__ and shall continue in full force and effect until and unless sooner terminated as provided below.

   (b) This Agreement may be terminated by either party by providing the other party with 90 days' written notice of termination; provided, however, that, if the Employer terminates this Agreement within one year of its execution, and the Trustees of the Fund determine that the Employer entered into this Agreement in order to secure benefits for particular employee(s) on account of health conditions know to the Employer before entering into this Agreement, then the Fund shall have the right to seek reimbursement of any benefits provided to such employee(s), including reasonable attorney's fees and other costs incurred in seeking such reimbursement.

6. **Delinquent Payments.** Any Employer who has failed to make contributions, underpaid or made untimely payments shall be obligated to pay the Welfare Fund (i) all cost, fees or other expenses incurred in any audit of the Employer; (ii) any amounts the Welfare Fund is required to pay out for the benefit of a Participant who would be eligible except for the failure of the Employer to make required contributions on his or her behalf; (iii) liquidated damages in an amount that is ten percent (10%) of the amount of contributions due; and (iv) the reasonable attorney's fees and other costs incurred by the Welfare Fund in the collection process; including court fees, audit fees and litigation expenses.

7. **Notices.** All notices, requests, demands and any other communications required or permitted under this Agreement shall be made in writing and shall be mailed by first class mail, postage prepaid, or delivered to:

   **Employer:**   Neal Masonry Inc
   968 S. Sandloch Rd
   Kankakee, IL 60901

   **Trust Fund:**

   Construction Industry Welfare Fund
   P.O. Box 5803
   Rockford, IL 61125-0803

Page 2 of 3

SEP 1 2 2005

Case: 3:18-cv-50179 Document #: 1 Filed: 05/31/18 Page 9 of 12 PageID #:9
Case: 1:10-cv-06822 Document #: 1-2 Filed: 10/28/10 Page 3 of 3 PageID #:14
01/12/2005 11:59 FAX 815 397 4887     CONST. IND. FUNDS                    ☒003

## PARTICIPATION AGREEMENT
### CONSTRUCTION INDUSTRY WELFARE FUND of ROCKFORD, ILLINOIS

8. **Amendment.** This Agreement may not be modified or amended by any oral or verbal promise. Any proposed modification or change of this Agreement must be made in writing, refer to this Agreement and be executed by both parties.

9. **Illinois Law; Severability.** This Agreement shall be subject to and construed under the laws of the State of Illinois. If any portion of this Agreement is determined to be unenforceable, such determination shall not affect the enforceability of the remainder of this Agreement which shall remain in full force and effect.

10. **Assignment.** This agreement shall inure to the benefit of and be binding on the parties and their respective successors and assigns.

To evidence their agreement, the parties have executed this Agreement on the date set opposite to their respective signatures below.

4-1-05
Date

Neal Masonry Inc
Employer

BY: Kim Deal
Its: President

_____
Date

**CONSTRUCTION INDUSTRY WELFARE FUND,**

BY: _____
Its: _____

Page 3 of 3

SEP 1 2 2005

4077/15

## PARTICIPATION AGREEMENT
(Rule 4 Participants - Owner Operators)

This Participation Agreement ("Agreement") is dated April 1, 2005 and is executed by and between Michael F. Neal _____, and his, her or its successors and assigns (the "Owner Operator") and the CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS (the "Welfare Fund").

The CONSTRUCTION INDUSTRY WELFARE FUND OF ROCKFORD, ILLINOIS ("Welfare Fund") has been established by an Agreement and Declaration of Trust effective April 20, 1954, as amended from time to time ("Trust Agreement"), for the purpose of providing welfare benefits for employees represented through collective bargaining by the unions and for certain other non-bargaining unit employees. The Owner Operator is a member of one of the unions which participate in the Fund and desires to participate in the Welfare Fund, in accordance with terms and conditions set forth in the Trust Agreement and this Participation Agreement.

In consideration of the mutual covenants and undertakings set forth in this Agreement and other good and valuable consideration, the sufficiency and receipt of which is acknowledged, the Owner Operator and the Welfare Fund agree that the recitals set forth above are a part of this Agreement and further agree as follows:

1. **Representations of Owner Operator.** The Owner Operator is doing business in the State of Illinois as a corporation, partnership or sole proprietor, and is a signatory to an agreement with at least one of the Welfare Fund's member unions. The Owner Operator also represents that there are no understandings or agreements regarding its obligation to make contributions to the Fund other than those which are contained in this Agreement or which have been both reduced to writing and provided to the Fund prior to its execution of this Agreement.

2. **Employees Covered As "Rule 4" Participants.**

    (a) In order to be covered as a "Rule 4" Participant under this Agreement, an individual must be an Owner Operator who is a member of at least one of the unions which participate in the Fund, and is a signatory to an agreement with at least one of those unions. (If other individuals are employed by the Owner Operator, they may be eligible to participate in the Fund as bargaining unit employees or as "Rule 3" Participants under the rules and regulations promulgated by the Welfare Fund's Board of Trustees. Any such participation is subject to execution of a collective bargaining agreement with a member union or approval by the Fund's Board of Trustees and execution of an appropriate Rule 3 Participation Agreement.) For purposes of this Agreement, the term "Owner Operator" shall mean an individual who is actively performing services for remuneration in the construction trades. An Owner Operator will be considered to be "actively performing services" if he or she is working on a full-time basis in the construction trades or is on a leave of absence so long as the Owner Operator is expected to return to his or her regular duties in the construction trades within a reasonable period of time. An Owner Operator's


EXHIBIT C

Case: 3:18-cv-50179 Document #: 1 Filed: 05/31/18 Page 11 of 12 PageID #:11

Case: 1:10-cv-082__ Document #: 1-3 Filed: 12/28/10 Page 2 of 3 PageID #:13
05/03/2004 09:20 FAX 815 397 486_ CONST. IND. FUNDS ⌀005

eligibility to participate in the Fund as a retiree is subject to the Fund's rules for such retiree coverage (and/or as required under the COBRA laws).

(b) The Fund may from time to time audit claims for purposes of confirming that the Individuals for whom benefits under the Plan will be or have been paid are Owner Operators and proper Rule 4 Participants as defined in this Agreement (or their dependants). In the event the Fund determines that benefits have been paid to or on behalf of an individual who is not an Owner Operators and a proper Rule 4 Participant as defined in this Agreement (or a dependant of a proper Rule 4 Participant), the Fund shall have a right to full reimbursement of the benefits paid from the Owner Operator. Such amounts shall be promptly reimbursed to the Fund, and the Fund shall be entitled to recover the attorneys fees it incurs in collecting such amounts, including any attorney's fees incurred in its pre-litigation efforts to collect such amounts.

3. **Owner Operator's Contributions**. The Owner Operator shall make contributions to the Fund for a minimum of 173 hours per month at the contribution rate determined from time to time by the Trustees of the Fund. Increases in such contribution rates shall become effective on the date approved by the Trustees of the Fund.

4. **Adoption of Trust Agreement**. The Owner Operator hereby adopts and agrees to be bound by the Trust Agreement of the Welfare Fund, as amended from time to time, including but not limited to the Fund's right to conduct audits, as well as any rules and regulations promulgated by the Welfare Fund's Board of Trustees.

5. **Delinquent Payments**. Monthly contributions must be mailed to the Trust Fund office no later than the 15th day of the month following the month for which the payment is due. Any Owner Operator who has failed to make contributions, underpaid or made untimely payments shall be obligated to pay the Welfare Fund (a) all costs, fees or other expenses incurred in any audit of the Owner Operator; (b) any amounts the Welfare Fund is required to pay out for the benefit of a Participant who would be eligible except for the failure of the Owner Operator to make required contributions on his or her behalf; (c) liquidated damages in an amount that is ten percent (10%) of the amount of contributions due; and (d) the reasonable attorney's fees and other costs incurred by the Welfare Fund in the collection process, including court fees, audit fees and litigation expenses.

6. **Term and Termination**.

(a) This Agreement and the adoption of the Trust Agreement referred to in paragraph 4 above shall become effective on the date first written above, and shall continue in full force and effect until and unless sooner terminated as provided below.

(b) This Agreement may be terminated by either party by providing the other party with 90 days' written notice of termination; provided, however, that, if the Owner Operator terminates this Agreement within one year of its execution, and the Trustees of the Fund determine that the Owner Operator entered into this Agreement in order to secure benefits on account of health conditions known to the Owner Operator before

-2-

entering into this Agreement, then the Fund shall have the right to seek reimbursement of any benefits provided to such employee(s), including reasonable attorney's fees and other costs incurred in seeking such reimbursement.

(c) Following a termination of this Agreement, the Owner Operator may apply to the Fund's Board of Trustees for renewal of his or her coverage as a Rule 4 Participant on one (1) additional occasion. Re-entry into the Fund under these conditions will be in the sole discretion of the Board of Trustees. No Owner Operator will be allowed to return to the Fund in this fashion on more than one (1) occasion.

7. **Amendment.** This Agreement may not be modified or amended by any oral or verbal promise. Any proposed modification or change of this Agreement must be made in writing, refer to this Agreement and be executed by both parties.

8. **Applicable Law; Severability.** Except to the extent governed by the Employee Retirement Income Security Act ("ERISA"), this Agreement shall be subject to and construed under the laws of the State of Illinois. If any portion of this Agreement is determined to be unenforceable, such determination shall not affect the enforceability of the remainder of this Agreement which shall remain in full force and effect.

9. **Assignment.** This Agreement shall inure to the benefit of and be binding on the parties and their respective successors and assigns.

To evidence their agreement, the parties have executed this Agreement on the date set opposite to their respective signatures below.

4/1/05
Date

OWNER OPERATOR

BY: Neal Masonry, Inc.

_____
Date

CONSTRUCTION INDUSTRY WELFARE FUND,

BY: _____
Its _____